IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **IMPERIUM INSURANCE COMPANY** | § § § | **PLAINTIFF** |
| **v.** | § § | **Civil No. 1:24-cv-100-HSO-RPM** |
| | § § | |
| **ALAN JOSEPH MORAN, et al.** | § | **DEFENDANTS** |

<u>**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF IMPERIUM INSURANCE COMPANY'S
MOTION [25] FOR SUMMARY JUDGMENT**</u>

In this insurance coverage declaratory judgment action, Plaintiff Imperium Insurance Company seeks summary judgment on grounds that the plain and ordinary terms of the insurance policies at issue afford no coverage for Defendants A&M Spray Foam Insulation and Alan Joseph Moran for Mr. Moran's admitted acts of child exploitation. Mot. [25]; Mem. [26]. Because these two Defendants are not entitled to any defense, indemnity, or coverage based upon the plain language of the policies, the Motion [25] for Summary Judgment should be granted.

I. <u>BACKGROUND</u>

A. <u>Factual Background</u>

Plaintiff Imperium Insurance Company ("Plaintiff" or "Imperium") issued several insurance policies to Defendant Philip's Pest Control Co., LLC ("Philip's") effective from April 1, 2021, to April 1, 2022 – specifically, a commercial general liability insurance policy (the "CGL Policy"), an excess liability policy (the "Excess Policy"), an automobile policy (the "Auto Policy"), and a worker's compensation and

employer's liability policy (the "WC Policy") (collectively, the "Policies").  *See* Policies [25-1], [25-2], [25-3], [25-4].

On March 14, 2022, Defendants Russell and Raychel Dykes (the "Dykeses"), on behalf of themselves and their minor son, filed a complaint in the Circuit Court of Hancock County, Mississippi (the "First Complaint"), naming as defendants Philip's, Defendant A&M Spray Foam Insulation ("A&M"), and Defendant Alan Joseph Moran ("Moran").  *See* State Ct. J. [25-5] at 1; 1st State Ct. Compl. [1-2] at 11-12; 2d State Ct. Compl. [1-2] at 1-2, 6-7.  The First Complaint alleged that Moran, who was a manager of A&M and managerial employee of Philip's, was charged with committing a simple assault upon the Dykeses' child and contributing to the child's delinquency.  *See* 1st State Ct. Compl. [1-2] at 13-16.  At the time, the Dykeses' child was allegedly receiving training from Moran in order to work for Philip's.  *See id.*  The Dykeses brought suit advancing claims against Philip's, A&M, and Moran for assault/battery, false imprisonment, intentional infliction of emotional distress/negligent infliction of emotional distress, negligence, negligence per se, and gross negligence.  *See id.* at 16-21.  That case remains pending in the Hancock County Circuit Court.  *See* Compl. [1] at 1; Am. Compl. [18] at 20.

According to the Dykeses, after the First Complaint was filed, "Moran and his wife formed a new company to perform the business that . . . A&M performed," Reel South Insulation & Spray Foam, LLC ("Reel South"), and the owner of Philip's also formed a new business, Gulf Coast Pest Control, LLC ("GCPC").  2d State Ct. Compl. [1-2] at 6-7.  Accordingly, on April 13, 2023, the Dykeses filed a second

state-court complaint against Philip's, A&M, GCPC, and Reel South (the "Second Complaint"), under Mississippi's Uniform Fraudulent Transfer Act ("UFTA"), Mississippi Code § 15-3-101, et seq., alleging fraudulent transfers of property and assets from A&M and Philip's to Reel South and GCPC, respectively. *Id.* at 1, 7-9. Then, in February 2024, Moran pled guilty to state criminal charges of exploitation of a child and contributing to the neglect or delinquency of a child. *See* Ex. [1-4] at 1; Ex. [18-7] at 1-5; Ex. [25-7] at 1. And on May 24, 2024, the state court granted the Dykeses' motion for summary judgment on the Second Complaint, finding that under the UFTA they were entitled to void the transfers of assets and property from A&M and Philip's to Reel South and GCPC. State Ct. J. [25-5] at 3-4.

B.   Procedural History

After Moran pled guilty, Imperium initiated this lawsuit on March 28, 2024, by filing a Complaint [1] for Declaratory Judgment, naming Moran, A&M, Philip's, and the Dykeses, *see* Compl. [1], followed by an Amended Complaint [18], *see* Am. Compl. [18]. The Amended Complaint [18] states that Imperium has been defending Moran under a reservation of rights since July 14, 2022, but that neither Moran nor his company, A&M, is an insured under its Policies with Philip's. *See id.* at 20. For this reason, Imperium contends the Policies do not afford coverage to Moran or A&M for the claims asserted by the Dykeses in the First Complaint. *See id.* Imperium seeks an adjudication and declaration under the Policies that: (1) Imperium has no duty to defend Moran and/or A&M against the claims in the First Complaint; (2) Imperium has no duty to indemnify Moran and/or A&M against the

3

claims in the First Complaint; (3) Imperium "has no duty to satisfy and/or pay any judgment entered" against Moran and/or A&M with respect to the First Complaint; (4) Imperium may withdraw from providing any defense to Moran in that lawsuit; and (5) Imperium has no obligation to Moran and A&M "in the premises whatsoever." *Id.* at 21.

Imperium has now filed a Motion [25] for Summary Judgment, arguing that the Policies afford no coverage for either Moran or A&M because they are not insureds, but that even if they were, Moran's intentional criminal acts are excluded from coverage. *See* Mot. [25] at 8-12. And because there is no coverage under any other policy, Imperium maintains that there is no coverage under the Excess Policy. *See id.* at 13. No Defendant has filed a substantive response to Imperium's Motion [25], and the time for doing so has long passed. *See* L.U. Civ. R. 7(b)(4); Text Order, Dec. 23, 2024. The Court therefore considers Imperium's Motion [25] without the benefit of a response.[1]

## II. DISCUSSION

A.    Relevant Legal Standards

Under 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "Any such declaration shall

---

[1] After being granted several extensions of time to respond, Moran and A&M filed a cursory Response [32] on December 20, 2024, along with a Motion [31] under Federal Rule of Civil Procedure 56(d). The Court denied the Rule 56(d) Motion [31], *see* Text Order, Dec. 20, 2024, but granted Defendants until January 23, 2025, to respond to the Motion [25] for Summary Judgment, *see* Text Order, Dec. 23, 2024. Despite this extension, Moran and A&M never filed a substantive response to Imperium's Motion [25].

have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.*

"As a general matter, federal courts may issue declaratory judgments only where there exists an actual case or controversy." *TIG Ins. Co. v. Woodsboro Farmers Coop.*, 117 F.4th 715, 722 (5th Cir. 2024) (quotation omitted). The Fifth Circuit has held that "[a]n actual case or controversy exists before the resolution of an insured's underlying suit concerning the insurer's duty to defend." *Id.* (quotation and emphasis omitted). Although questions regarding a duty to indemnify generally cannot be resolved until the conclusion of the underlying litigation, "an actual case or controversy exists in declaratory actions on an insurer's liability for an underlying state-court action while the action is still pending." *Id.* (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273-74 (1941)). Here, there exists a justiciable controversy within the meaning of the Declaratory Judgment Act as to both the duties to defend and to indemnify. *See id.*; *Maryland Cas. Co.*, 312 U.S. at 273-74.

With respect to Imperium's request for summary judgment, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th

5

Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "A genuine dispute of material fact exists if the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party."  *Cent. Crude, Inc. v. Liberty Mut. Ins. Co.*, 51 F.4th 648, 652 (5th Cir. 2022) (quotation omitted).

If the movant carries its initial burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A court views all evidence in the light most favorable to the nonmovant and draws all reasonable inferences in his favor.  *Id.*  But if the nonmovant cites evidence that "is merely colorable, or is not significantly probative," summary judgment may nevertheless be granted.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986) (citations omitted).

B.  <u>Analysis</u>

1.  <u>Interpretation of Insurance Policies</u>

Imperium disputes whether it owes any duties or obligations to Moran and A&M under the Policies.  *See* Am. Compl. [18] at 20-21.  Where, as here, the Court exercises subject-matter jurisdiction under 28 U.S.C. § 1332, state law applies.[2]  And because the Policies were issued in Mississippi, they are governed by Mississippi law.  *See Gold Coast Commodities, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 96 F.4th 769, 771 (5th Cir. 2024).

---

[2] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

In construing an insurance policy, a court must "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009) (quotation omitted). "In Mississippi, insurance policies[ ] are contracts, and as such, they are to be enforced according to their provisions." *Id.* (quotation omitted). "A policy must be considered as a whole, with all relevant clauses together." *United States Fid. & Guar. Co. of Mississippi v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

"[W]hen the terms of an insurance policy are unambiguous, they must be enforced as written." *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyds, London*, 612 F.3d 383, 386 (5th Cir. 2010). If "a contract contains ambiguous or unclear language, then ambiguities must be resolved in favor of the non-drafting party." *Martin*, 998 So. 2d at 963. "Ambiguities exist when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *Id.* "Exclusions and limitations on coverage are also construed in favor of the insured." *Id.* The Mississippi Supreme Court has held that "[l]anguage in exclusionary clauses must be clear and unmistakable as those clauses are strictly interpreted." *Id.* (quotation omitted).

An insurance company's duty to defend its insured arises when it becomes aware that a complaint has been filed which contains reasonable, plausible allegations of conduct covered by the policy. *See Gold Coast Commodities, Inc.*, 96 F.4th at 772 (quoting *Baker Donelson Bearman & Caldwell, P.C. v. Muirhead*, 920

7

So.2d 440, 451 (Miss. 2006)). "An insurer has an absolute duty to defend a complaint which contains allegations covered by the language of the policy, independent from its duty to indemnify." *Sturkin v. Mississippi Ass'n of Supervisors, Inc.*, 315 So. 3d 521, 537 (Miss. Ct. App. 2020) (quotation omitted). But no duty to defend arises where a claim falls outside the policy's coverage. *See Gold Coast Commodities, Inc.*, 96 F.4th at 772.

2. Whether Imperium Owes Moran or A&M Any Duties or Obligations under the CGL Policy

a. Relevant Policy Language

The CGL Policy affords coverage for bodily injury and property damage under Coverage A, and personal and advertising injury liability under Coverage B. *See* CGL Policy [25-1] at 29-36.[3] It defines an "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured." *Id.* at 29. Philip's is listed as the insured, as are (1) its members, "but only with respect to the conduct of [its] business," and (2) its managers, "but only with respect to their duties as [its] managers." *Id.* at 37. Also included are Imperium's "employees," other than its "executive officers" or "managers," "but only for acts within the scope of their employment by [Philip's] or while performing duties related to the conduct of [its] business." *Id.* at 38.

Coverage A "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 29. Imperium has "the right and duty to defend the

---

[3] In citing the Policies, the Court refers to the CM/ECF generated page numbers.

insured against any 'suit' seeking those damages," but it has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.* Coverage A applies only if three elements are satisfied: (1) "[t]he 'bodily injury' and 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'"; (2) it "occurs during the policy period"; and (3) no insured knew it had occurred prior to the policy period. *Id.* An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 43. Coverage A excludes "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured," *id.* at 30, and "arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured," *id.* at 32.

Coverage B applies to personal and advertising injury liability, with Imperium agreeing to pay

> those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.
> \* \* \*
> This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*Id.* at 34. The CGL Policy defines "personal and advertising injury" as

> injury, including consequential "bodily injury," arising out of one or more of the following offenses:
> a.    False arrest, detention or imprisonment;
> b.    Malicious prosecution;
> c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a

9

>      person occupies, committed by or on behalf of its owner, landlord or lessor;
> d.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e.   Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f.   The use of another's advertising idea in your "advertisement"; or
> g.   Infringing upon another's copyright, trade dress or slogan in your "advertisement."

*Id.* at 43. But "[t]his insurance does not apply to . . . '[p]ersonal and advertising injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury'" or "'[p]ersonal and advertising injury' arising out of a criminal act committed by or at the direction of the insured." *Id.* at 34.

b.   Analysis

Imperium first contends that neither Moran nor A&M were "insureds" under the CGL Policy as of February 2022, when Moran committed the criminal acts in question. *See* Am. Compl. [18]; 1st State Ct. Compl. [1-2] at 3-6. There is no evidence or other indication that A&M was listed as an insured in the Declarations, or that it was ever a member, manager, or employee of Philip's, meaning that it was not an "insured." *See* CGL Policy [25-1] at 37-38. As for Moran, Imperium has presented evidence that, as of February 2022, he was not a member or manager of Philip's, nor was he an employee. *See id.*; Mem. [26] at 8; Ex. [25-8] at 1-3; Ex. [25-11] at 1-4; Ex. [25-12] at 4-12; Ex. [25-13] at 44:15-17. Therefore, Moran was also not an "insured" at the time of the incident in question. *See* CGL Policy [25-1] at 37-38; *Penthouse Owners Ass'n, Inc.*, 612 F.3d at 386; *Martin*, 998 So. 2d at 963.

10

Even if Moran was somehow deemed an "insured" because of his prior work at Philip's, *see* Ex. [25-13] at 43-44 (Rule 30(b)(6) deposition of Philip's, discussing Moran's role in its business up to October of 2021), there is no coverage under either Coverage A or Coverage B given the undisputed facts. For Coverage A, an "occurrence" is defined as "an accident." CGL Policy [25-1] at 29. "An accident by its very nature, produces unexpected and unintended results. It follows that bodily injury or property damage, expected or intended from the standpoint of the insured, cannot be the result of an accident." *U.S. Fid. & Guar. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002). The allegations against Moran and his resulting criminal convictions constituted intentional conduct on his part, and were not "an accident," such that coverage did not attach. CGL Policy [25-1] at 29.

Even if coverage attached, the "bodily injury" in question was "expected or intended" from Moran's standpoint, which would exclude coverage under Coverage A. *Id.* at 30; *see Martin*, 998 So. 2d at 963. To the extent the alleged harm occurred in or resulted from Moran's use of a Philip's automobile, "bodily injury" arising out of ownership, use, or entrustment to others of any automobile owned or operated by, or loaned to, any insured, is also excluded from Coverage A. CGL Policy [25-1] at 32.

As for Coverage B, the CGL Policy defines "personal and advertising injury" as that arising out of certain offenses, none of which are applicable here, so there was no coverage under the plain terms of the insurance contract. *See id.* at 49; *Penthouse Owners Ass'n, Inc.*, 612 F.3d at 386; *Martin*, 998 So. 2d at 963. Even if

11

the allegations for which Moran and A&M seek coverage could be construed to arise from a case of false imprisonment, *see* CGL Policy [25-1] at 43, at least two clear and unmistakable exclusions apply, *see id.* at 34; *Martin*, 998 So. 2d at 963. Specifically, Coverage B excludes "personal and advertising injury" that is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury,'" and it excludes "'[p]ersonal and advertising injury' arising out of a criminal act committed by or at the direction of the insured." CGL Policy [25-1] at 34. Any "personal and advertising injury" in this case was plainly caused by him with knowledge that his actions would violate the rights of another and would inflict "personal and advertising injury." *Id.* This is excluded under the language of the CGL Policy. *See id.*

In sum, Moran and A&M were not insureds under the CGL Policy, but even if Moran somehow were deemed an insured, there is no coverage. *See id.* at 29-30, 32 34, 49. Imperium owes no duty to defend or indemnify Moran and A&M under the CGL Policy, and its Motion [25] for Summary Judgment should be granted in this respect. *See id.*; *Gold Coast Commodities, Inc.*, 96 F.4th at 772.

3. <u>Whether Imperium Owes Moran or A&M Any Duties or Obligations under the Auto Policy</u>

a. <u>Relevant Policy Language</u>

The Auto Policy defines the "insured" as Philip's for any "covered 'auto'"; "[a]nyone else while using with [Philip's] permission a covered 'auto'" it owns, with certain exceptions; and "[a]nyone liable for the conduct of an 'insured.'" Auto Policy

12

[25-3] at 60-61. The Auto Policy provides that Imperium "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" *Id.* at 60. "'Accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" *Id.* at 68. But the Auto Policy contains some exclusions, including that "[t]his insurance does not apply to . . . '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." *Id.* at 60.

b.  <u>Analysis</u>

There is no evidence in the record that either Moran or A&M was an insured or was permitted by Philip's to use a covered auto at the time in question, meaning there is no coverage under the Auto Policy for the allegations against them. *See id.* at 60-61. Even if Moran were deemed an insured because of his prior work at Philip's, *see* Ex. [25-13] at 43-44 (Rule 30(b)(6) deposition of Philip's, discussing Moran's role as foreman of its mosquito control business up to October of 2021), Imperium has presented evidence that the incidents in question were not "accidents," such that coverage did not attach, *see* Auto Policy [25-3] at 60. An accident occurs when the results were unexpected and unintended from the standpoint of the insured, *see Omnibank*, 812 So. 2d at 200, but Moran intentionally acted in enticing the minor "to meet to engage in a sex act," Ex. [18-7] at 3. Because there was no "accident," there is no coverage. Auto Policy [26-3] at 60.

13

Even if the coverage provision were found to apply, the clear and unmistakable expected-or-intended injury exclusion precludes coverage for Moran's acts. *See id.*; *Martin*, 998 So. 2d at 963. Moran's intentional acts are the basis of the Dykeses' claims and are plainly excluded. *See* Auto Policy [26-3] at 60. Thus, Imperium had no duty to defend a suit against either A&M or Moran seeking damages for bodily injury under the Auto Policy, or to indemnify either A&M or Moran. *See id.*; *Gold Coast Commodities, Inc.*, 96 F.4th at 772. The Motion [25] should be granted as to the Auto Policy.

4.   <u>Whether Imperium Owes Moran or A&M Any Duties or Obligations under the WC Policy</u>

a.   <u>Relevant Policy Language</u>

The WC Policy was issued to Philip's[4] and covers both workers compensation insurance (in Part One) and employers liability insurance (in Part Two). *See* WC Policy [25-4] at 36-38. For workers compensation, Imperium agrees to "pay promptly when due the benefits required of you by the workers compensation law." *Id.* at 36. "Workers Compensation Law means the workers or workmen's compensation law and occupational disease law" of Mississippi. *Id.*; *see also id.* at 31. Imperium has "no duty to defend a claim, proceeding or suit that is not covered by this insurance." *Id.* at 36.

Part Two states that "[t]his employers liability insurance applies to bodily injury by accident or bodily injury by disease." *Id.* at 37. Imperium "will pay all

---

[4] "You are insured if you are the employer named in Item 1 of the Information Page." WC Policy [25-4] at 36. The only named insured in Item 1 is "Philip's Pest Control LLC." *Id.* at 31.

14

sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance." *Id.* Part Two excludes "[b]odily injury intentionally caused or aggravated by you[.]" *Id.* at 38.

b. Analysis

Philip's is the only named insured in the WC Policy and the only one Imperium was obligated to indemnify or defend under either Part One or Part Two. *See id.* at 31, 36-38. Because neither Moran nor A&M was an insured under this Policy, Imperium owed no duty to defend or indemnify them. *See id.*; *Gold Coast Commodities, Inc.*, 96 F.4th at 772. Moreover, the First Complaint against Moran and A&M does not state any claim that arguably falls within the WC Policy's coverage, obviating any duty to defend. *See Sturkin*, 315 So. 3d at 537. Imperium has demonstrated that it is entitled to summary judgment as to the WC Policy. *See* Mot. [25]; Mem. [26].

5. Whether Imperium Owes Moran or A&M Any Duties or Obligations under the Excess Policy

a. Relevant Policy Language

The Excess Policy agrees to "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'injury or damage' to which insurance provided under this Coverage Part applies." Excess Policy [25-2] at 23.

> Liability under this Coverage Part does not apply to a given claim unless and until:
> a. The insured or insured's "controlling underlying insurer" has become obligated to pay the "retained limit"; and

15

      b.      The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.

*Id.* at 27.

"'Controlling underlying insurance' means any policy of insurance or self-insurance listed in the Declarations under the Schedule of 'controlling underlying insurance,'" *id.*, which includes the Auto, WC, and CGL Policies issued to Philip's, *see id.* at 22. "Retained limit" is defined as "the available limits of 'controlling underlying insurance' applicable to the claim." *Id.* at 27.

b.    <u>Analysis</u>

Based upon the unambiguous terms of the Excess Policy, liability does not attach to a given claim unless and until Imperium has become obligated to pay the retained limit under either the CGL Policy, the Auto Policy, or the WC Policy. *See id.* at 22, 27. Because the Court has already determined that there is no coverage for Moran or A&M under any of these Policies, there can be no coverage for them under the Excess Policy. *See id.* And because the state-court complaint does not state a claim against Moran or A&M arguably falling within the scope of the Excess Policy's coverage provision, no duty to defend Moran or A&M arose. *See id.* at 23; *Sturkin*, 315 So. 3d at 537.

### III. <u>CONCLUSION</u>

In light of the unambiguous terms of the Policies and the lack of a genuine dispute of material fact, Imperium has demonstrated that it is entitled to judgment

as a matter of law, and its Motion [25] for Summary Judgment should be granted. *See* Fed. R. Civ. P. 56(a).  Imperium is entitled to a declaratory judgment that it has no duty to defend or indemnify Moran or A&M as to the claims raised in the state-court lawsuit against them, that it has no duty to satisfy and/or pay any judgment entered against Moran or A&M in that lawsuit, and that it has no obligation to Moran or A&M in the premises whatsoever.[5]

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Imperium Insurance Company's Motion [25] for Summary Judgment is **GRANTED**, and a **DECLARATORY JUDGMENT** will be entered in favor of Plaintiff Imperium Insurance Company pursuant to Federal Rules of Civil Procedure 57 and 58 and 28 U.S.C. § 2201.

**SO ORDERED** this the 23rd day of April, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[5]  Imperium also asks for "[a]n adjudication and declaration by the Court that Imperium Insurance Company may withdraw from providing any defense to Alan Joseph Moran" in the state court lawsuit.  Am. Compl. [18] at 21.  But whether withdrawal of counsel is permitted in that lawsuit is a question for the state court, not a matter of interpretation of the Policies before this Court in a declaratory judgment action.  *See id.*; 28 U.S.C. § 2201.